JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ALVARO R. GUTIERREZ and YAMILETH D. GUTIERREZ

**DEFENDANTS**

PHARMACIA & UPJOHN CO.; PHARMACIA LLC; PFIZER INC.; PERRIGO COMPANY; AND PADDOCK LABORATORIES INC.

**(b)** County of Residence of First Listed Plaintiff   Middlesex County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   New York County, NY
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Arnold Levin; Laurence S. Berman; Fred Longer; Michael M. Weinkowitz
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500, Philadelphia, PA 19106 (215) 592-1500

Attorneys *(If Known)*
Lauren Wilchek
DLA Piper LLP (US), One Liberty Place, 1650 Market Street, Suite 4900, Philadelphia, PA 19103 (215) 656-4537

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government     ☐ 3  Federal Question
    Plaintiff               *(U.S. Government Not a Party)*

☐ 2  U.S. Government     ☒ 4  Diversity
    Defendant              *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |    Product Liability | |    28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |    Liability | ☒ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |    Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
|    & Enforcement of Judgment |    Slander |    Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |    Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted |    Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark |    Corrupt Organizations |
|    Student Loans | ☐ 340 Marine |    Injury Product | | | ☐ 480 Consumer Credit |
|    (Excludes Veterans) | ☐ 345 Marine Product |    Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment |    Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud |    Act | ☐ 862 Black Lung (923) |    Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract |    Product Liability | ☐ 380 Other Personal |    Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |    Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise |    Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - |    Product Liability |    Leave Act | |    Act |
| |    Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** |    Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |    Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | |    or Defendant) |    Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ |    Sentence | |    26 USC 7609 |    State Statutes |
| ☐ 245 Tort Product Liability |    Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |    Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |    Other | ☐ 550 Civil Rights |    Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | |    Conditions of | | | |
| | |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original     ☒ 2  Removed from     ☐ 3  Remanded from     ☐ 4  Reinstated or     ☐ 5  Transferred from     ☐ 6  Multidistrict
    Proceeding         State Court           Appellate Court         Reopened         Another District      Litigation
                                                                    *(specify)*

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332, 1441, and 1446
Brief description of cause:
Plaintiffs allege pharmaceutical product liability for wrongful death and other damages.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
    UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALVARO ROMAN GUTIERREZ AND )
YAMILETH D. GUTIERREZ, ) Case No. _____
)
Plaintiffs, )
)
v. )
)
PHARMACIA & UPJOHN CO.; PHARMACIA )
LLC; PFIZER INC.; PERRIGO COMPANY; AND ) Removed from Court of Common
PADDOCK LABORATORIES INC., ) Philadelphia County, Pennsylvania,
) Case ID: 140702351
Defendants. )

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Pharmacia & Upjohn

Company LLC[1] and Pfizer Inc. (collectively, "Pfizer"), with the consent of Defendants Perrigo

Company and Paddock Laboratories, LLC[2] (collectively, "Defendants"), by and through their

undersigned counsel, file this notice of removal of this civil action from the First Judicial District

of Pennsylvania, Court of Common Pleas of Philadelphia County, Civil Trial Division, to the

United States District Court for the Eastern District of Pennsylvania. In support of this removal,

Defendants state as follows:

## INTRODUCTION

In this lawsuit, Plaintiffs Alvaro Roman Gutierrez and Yamileth D. Gutierrez, allege that

Plaintiff Alvaro Roman Gutierrez suffered a myocardial infarction as a result of his use of Depo-

Testosterone (the generic name is testosterone cypionate). Defendants are all manufactures of

testosterone cypionate. Specifically, Pfizer manufactures Depo®-Testosterone. Plaintiffs assert

---

[1] Pharmacia & Upjohn Company LLC is incorrectly referred to in the Complaint as "Pharmacia & Upjohn
Company" (case caption and ¶3).
[2] Paddock Laboratories, LLC is incorrectly referred to in the Complaint as "Paddock Laboratories Inc." (case
caption).

claims for: (1) strict liability—manufacturing defect, (2) strict products liability—design defect, (3) negligent failure to warn, (4) negligence, (5) breach of express warranty, (6) breach of implied warranty, (7) fraud, (8) negligent misrepresentation, (9) intentional infliction of emotional distress, (10) negligent infliction of emotional distress, (11) loss of consortium, and (12) punitive damages.

This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332. Complete diversity exists between Plaintiffs and all Defendants as Plaintiffs are citizens and residents of New Jersey, and none of the Defendants are citizens or residents of New Jersey. In addition, Plaintiffs seek damages that exceed $75,000, and all other requirements for removal have been met. Accordingly, removal to this Court is proper.

## STATEMENT OF REMOVAL

1.      On July 21, 2014, Plaintiffs filed a Praecipe To Issue Writ of Summons in Philadelphia County, docketed as Case ID: 140702351(the "State Court Action").

2.      On August 6, 2014, Defendants were served with the Praecipe To Issue Writ of Summons.

3.      On August 27, 2014, Defendants filed a Praecipe for Rule to File a Complaint.

4.      On September 5, 2014, Plaintiffs filed the Complaint. As of this filing, Defendants have not been served with the Complaint.

5.      This notice of removal is filed within thirty days of September 5, 2014.

6.      Pursuant to 28 U.S.C. §1446(a), true and legible copies of all pleadings, process, and all other filings in the State Court Action are collectively attached hereto as Exhibit A.

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1): "The district courts shall have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

8. Removal to this Court is proper under 28 U.S.C. § 1441(a): "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia County, Civil Trial Division is within the District Court for the Eastern District of Pennsylvania

9. Defendants base their removal on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## CITIZENSHIP OF THE PARTIES

10. Plaintiffs are residents of New Jersey. (Compl. ¶ 1.)

11. Defendant Pfizer Inc. is, and was at the time of filing of the Complaint, a Delaware corporation with its principal place of business in New York. Thus, it is a citizen of Delaware and New York for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1). Pfizer Inc. is not now, and was not at the time of filing of the Complaint, a citizen of Pennsylvania or New Jersey.

12. Defendant Pharmacia & Upjohn Company LLC is, and was at the time of filing of the Complaint, a Delaware limited liability company. The citizenship of an LLC is determined by the citizenship of all of its members.[3] *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). Pharmacia & Upjohn Company LLC's sole member is Pharmacia

---

[3] Pharmacia & Upjohn Company LLC's sole member is Pharmacia LLC, whose sole member is Wyeth Holdings LLC, whose sole member is Pfizer Holdings Americas Corporation, a Delaware corporation with its principal place of business in New York. None of these entities is or was at the time of filing of the Complaint a citizen of Pennsylvania or New Jersey.

LLC, which is a citizen of Delaware and New York. Pharmacia & Upjohn LLC is not now, and was not at the time of the Complaint, a citizen of Pennsylvania or New Jersey.

13.     Defendant Perrigo Company is, and was at the time of filing of the Complaint, a Delaware corporation with its principal place of business in Michigan. Thus, it is a citizen of Delaware and Michigan for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1). Perrigo Company is not now, and was not at the time of filing of the Complaint, a citizen of Pennsylvania or New Jersey.

14.     Defendant Paddock Laboratories, LLC is, and was at the time of filing of the Complaint, a Delaware corporation with its principal place of business in Minnesota.[4] Thus, it is a citizen of Delaware and Minnesota for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1). Paddock Laboratories, LLC is not now, and was not at the time of filing of the Complaint, a citizen of Pennsylvania or New Jersey.

15.     No Defendants are citizens of the State where the action was brought.

16.     As Plaintiffs and all Defendants are citizens of different States, there is complete diversity of citizenship for purposes of removal under 28 U.S.C. § 1332(a)(1).

## AMOUNT IN CONTROVERSY

17.     Plaintiffs allege that the amount in controversy exceeds $150,000.00, exclusive of interest and costs. (Compl. ¶ 12.)

18.     Accordingly, Plaintiffs' claims for damages exceed the requisite amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

## REMOVAL PROCEDURES

19.     Removal of this action is timely under 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a).

---

[4] Paddock Laboratories, LLC is a wholly-owned subsidiary of Perrigo Company.

20.    Removal to the United States District Court for the Eastern District of Pennsylvania is proper under 28 U.S.C. § 1441(a) because Philadelphia County is within the Eastern District of Pennsylvania.  *See* 28 U.S.C. § 81(b)(3).

21.    By filing this Notice of Removal, Defendants do not waive any defense that may be available to them.

22.    Pursuant to 28 U.S.C. § 1446(d), Pfizer will serve this Notice of Removal on Plaintiffs.

23.    Pursuant to 28 U.S.C. § 1446(d), Pfizer also will file written notice of the filing of this Notice of Removal, attached hereto as Exhibit B, with the Clerk of the Circuit Court of Philadelphia County, Philadelphia, concurrently with the filing of this Notice of Removal. Furthermore, Pfizer will serve the notice of filing on Plaintiffs.

WHEREFORE, Defendants respectfully give notice that this action has been removed to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted this 1 day of October 2014.

Lauren Wilchek PA Bar No. 207101
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
Telephone: 215.656.2437
Fax: 215.606.2137
lauren.wilchek@dlapiper.com

# **EXHIBIT A**

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**JULY 2014**

E-Filing Number: 1407042589

**002351**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| ALVARO R.. GUTIERREZ | PHARMACIA & UPJOHN CO. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 71 ALBERT ST. WOODBRIDGE NJ 07095 | 235 E. 42ND ST. NEW YORK NY 10017 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| YAMILETH D.. GUTIERREZ | PHARMACIA LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 71 ALBERT STREET WOODBRIDGE NJ 07095 | 235 E. 42ND STREET NEW YORK NY 10017 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | PFIZER INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 235 E. 42ND STREET NEW YORK NY 10017 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 5 | ☐ Complaint ☐ Petition Action ☐ Notice of Appeal ☒ Writ of Summons ☐ Transfer From Other Jurisdictions |

AMOUNT IN CONTROVERSY
☐ $50,000.00 or less
☒ More than $50,000.00

COURT PROGRAMS
☐ Arbitration ☐ Mass Tort ☐ Commerce ☐ Settlement
☒ Jury ☐ Savings Action ☐ Minor Court Appeal ☐ Minors
☐ Non-Jury ☐ Petition ☐ Statutory Appeals ☐ W/D/Survival
☐ Other:

CASE TYPE AND CODE
2O - PERSONAL INJURY - OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED PRO PROTHY**
JUL **22** 2014
**D. SAVAGE**

IS CASE SUBJECT TO COORDINATION ORDER?    YES    NO

TO THE PROTHONOTARY:
Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: ALVARO R. GUTIERREZ , YAMILETH D. GUTIERREZ
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| MICHAEL M. WEINKOWITZ | LEVIN FISHBEIN SEDRAN&BERMAN 510 WALNUT ST STE 500 PHILADELPHIA PA 19106 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215)592-1500 | (215)592-4663 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 76033 | MWeinkowitz@lfsblaw.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *MICHAEL WEINKOWITZ* | Tuesday, July 22, 2014, 09:54 am |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF DEFENDANTS:**

1. PADDOCK LABORATORIES INC.
   3940 QUEBEC AVE. NO.
   MINNEAPOLIS MN 55427
2. PERRIGO COMPANY
   515 EASTERN AVE.
   ALLEGAN MI 49010
3. PFIZER INC.
   235 E. 42ND STREET
   NEW YORK NY 10017
4. PHARMACIA LLC
   235 E. 42ND STREET
   NEW YORK NY 10017
5. PHARMACIA & UPJOHN CO.
   235 E. 42ND ST.
   NEW YORK NY 10017

**LEVIN, FISHBEIN, SEDRAN & BERMAN**
**BY:**    **Arnold Levin, Esquire**
             **(Attorney ID No.02280)**
             **Laurence S. Berman, Esquire**
             **(Attorney ID No. 26965)**
             **Fred Longer, Esquire**
             **(Attorney ID No. 46653)**
             **Michael M. Weinkowitz, Esquire**
             **(Attorney ID No. 76033)**
**510 Walnut Street, Suite 500**
**Philadelphia, PA 19106**
**(215) 592-1500 / (215) 592-4663 (telecopier)**
LBerman@lfsblaw.com; MWeinkowitz@lfsblaw.com



*Attorneys for Plaintiff*

| | |
|---|---|
| **ALVARO ROMAN GUTIERREZ and**<br>**YAMILETH D. GUTIERREZ, h/w,**<br>**71 Albert Street**<br>**Woodbridge, NJ  07095,**<br><br>                   **Plaintiffs,**<br>**vs.**<br><br>**PHARMACIA & UPJOHN CO.**<br>**235 East 42nd Street**<br>**New York, NY 10017,**<br><br>**PHARMACIA LLC**<br>**235 East 42nd Street**<br>**New York, NY 10017,**<br><br>**PFIZER INC.**<br>**235 East 42nd Street**<br>**New York, NY 10017,**<br><br>**PERRIGO COMPANY**<br>**515 Eastern Avenue**<br>**Allegan, MI 49010,**<br><br>**PADDOCK LABORATORIES INC.**<br>**3940 Quebec Ave N.**<br>**Minneapolis, MN 55427,**<br><br>                   **Defendants.** | **COURT OF COMMON PLEAS**<br>**PHILADELPHIA COUNTY**<br><br>**JULY TERM, 2014**<br><br>**CIVIL ACTION NO. _____**<br><br>**JURY TRIAL DEMANDED** |

Case ID: 140702351

**PRAECIPE TO ISSUE A WRIT OF SUMMONS**

**TO THE PROTHONOTARY**:

Kindly issue a Writ of Summons for the below listed defendants in the above-captioned matter:

Pharmacia & Upjohn Co.
235 East 42nd Street
New York, NY 10017

Pharmacia LLC
235 East 42nd Street
New York, NY 10017

Pfizer Inc.
235 East 42nd Street
New York, NY 10017

Perrigo Company
515 Eastern Avenue
Allegan, MI 49010

Paddock Laboratories Inc.
3940 Quebec Ave N.
Minneapolis, MN 55427

Respectfully Submitted,

Dated: July 21, 2014

/s/ Laurence S. Berman
Laurence S. Berman
Levin Fishbein Sedran & Berman

*Attorneys for Plaintiff*

Case ID: 140702351

C.P.97

# Commonwealth of Pennsylvania

## CITY AND COUNTY OF PHILADELPHIA

ALVARO ROMAN GUTIERREZ and
YAMILETH D. GUTIERREZ,
71 Albert Street
Woodbridge, NJ 07095

COURT OF COMMON PLEAS

JULY _____ Term, 20__14__

No. _____

*vs.*

PHARMACIA & UPJOHN CO.,
PHARMACIA LLC, PFIZER INC., PERRIGO
COMPANY, PADDOCK LABORATORIES
INC.

To(1)

Pharmacia & Upjohn Co.
235 East 42nd Street
New York, NY 10017

Pfizer Inc.
235 East 42nd Street
New York, NY 10017

Perrigo Company
515 Eastern Avenue
Allegan, MI 49010

Pharmacia LLC
235 East 42nd Street
New York, NY 10017

Paddock Laboratories Inc.
3940 Quebec Ave N.
Minneapolis, MN 55427

You are notified that the Plaintiff(2)
*Usted esta avisado que el demandante*(2)

ALVARO ROMAN GUTIERREZ and YAMILETH D. GUTIERREZ, h/w

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*



JOSEPH H. EVERS
*Prothonotary*

By ___/s/ Joseph H. Evers___



Date ___07/21/2014___

(1) Name(s) of Defendant(s)
(2) Name(s) of Plaintiff(s)

10-208 (Rev. 6/00)

Case ID: 140702351

**COURT OF COMMON PLEAS**

JULY _____ **Term, 20** 14 ___ **No.** _____

ALVARO ROMAN GUTIERREZ and YAMILLETH
D. GUTIERREZ,
71 Albert Street
Woodbridge, NJ 07095

vs.

PHARMACIA & UPJOHN CO.,
PHARMACIA LLC, PFIZER INC.,
PERRIGO COMPANY, PADDOCK
LABORATORIES INC.

**SUMMONS**

Case ID: 140702351

**New Jersey Lawyers Service**
2333 U.S. Hwy 22 West
Union, New Jersey 07083
908-686-7300

JOB #    129047

*Filed and Attested by*
*PROTHONOTARY*
*06 AUG 2014 03:02 pm*

PLAINTIFF

ALVARO R. GUTIERREZ VS. PHARMACIA & UPJOHN CO. ET AL

DEFENDANT

- - - - - - - - - - - - -

FileRef#

**LEVIN FISHBEIN SEDRAN & BERMAN**
PATRICIA A. D' ANDREA
510 WALNUT ST. STE 500
PHILADELPHIA    **PA**    19106
(215) 592-1500

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
DOCKET JULY TERM 2014 NO. 2351

AFFIDAVIT OF SERVICE

Papers Served: **WRIT OF SUMMONS**

- - - - - - - - - - - - -

Person served at location stated:
**PERRIGO COMPANY**
515 EASTERN AVE.
ALLEGAN MI 49010

Served Successfully ☑    Not Served ☐    Date 7-30-14     Time 1:50 PM

Attempts: _____

_____ Delivered a copy to him/her personally

_____ Left a copy with a competent household member
over 14 years of age residing therein (indicate name
relationship at right)

✓ Left a copy with a person authorized to accept service, e.g., managing
agent, registered agent, etc.
(indicate name .official title at right)

Name of Person Served and relationship/title:

Andrew M Soloman
Legal Dept.

Description of Person Accepting Service:

Sex: M     Age: 50     Weight: 160     Skin Color: white     Hair Color: brown

Military Service I asked the person whether recipient was in active military service of the United States or the State of New Jersey in any
activity whatever and received a negative reply. Recipient wore civilian clothes and no military uniform. The source of my information
and the grounds of my belief are the conversation and observation above narrated.

Subscribed and Sworn to me this
31 day of July 2014

I Jayne Reeves , at the time of service a competent
adult not having a direct interest in the litigation. I declare under penalty of
perjury that the foregoing is true and correct.

Notary Signature

R R SQUIER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF KALAMAZOO
MY COMMISSION EXPIRES 2-18-2016
ACTING IN THE COUNTY OF KALAMAZOO

Signature of Process Service

Case ID: 140702351

New Jersey Lawyers Service
2333 U.S. Hwy 22 West
Union, New Jersey 07083
908-686-7300

JOB #      129048

Filed and Attested by
PROTHONOTARY
06 AUG 2014 04:08 pm
K. EDWARDS

PLAINTIFF                                                         COURT OF COMMON PLEAS

ALVARO R. GUTIERREZ VS. PHARMACIA & UPJOHN CO. ET AL              PHILADELPHIA COUNTY

                                                                 DOCKET JULY TERM 2014 NO. 2351

                        DEFENDANT

                                                                 AFFIDAVIT OF SERVICE

FileRef#

**LEVIN FISHBEIN SEDRAN & BERMAN**

PATRICIA A. D' ANDREA

510 WALNUT ST. STE 500

PHILADELPHIA        PA      19106             Papers Served:    **WRIT OF SUMMONS**

(215) 592-1500

Person served at location stated:

**PADDOCK LABORATORIES INC.**
3940 QUEBEC AVE. N.
MINNEAPOLIS MN 55427

Served Successfully ☒   Not Served ☐   Date  7-28-14       Time   9:27 AM

Attempts: _____

_____ Delivered a copy to him/her personally                   Name of Person Served and relationship/title:

_____ Left a copy with a competent household member            *Steve Laninga*
over 14 years of age residing therein (indicate name            *Vice President*
relationship at right)

☒ Left a copy with a person authorized to accept service, e.g., managing
agent, registered agent, etc.
(indicate name official title at right)

Description of Person Accepting Service:

Sex: M      Age: 50      Weight: 180     Skin Color: White     Hair Color: Brown

Military Service I asked the person whether recipient was in active military service of the United States or the State of New Jersey in any
activity whatever and received a negative reply. Recipient wore civilian clothes and no military uniform. The source of my information
and the grounds of my belief are the conversation and observation above narrated.

Subscribed and Sworn to me this              I  *Neil Hansor*          , at the time of service a competent
28th day of July      2014                   adult not having a direct interest in the litigation. I declare under penalty of
                                             perjury that the foregoing is true and correct.

_____             _____
Notary Signature                            Signature of Process Service

DAVID HALLDORSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2015

Case ID: 140702351

# New Jersey Lawyers Service
## 2333 U.S. Hwy 22 West
## Union, New Jersey 07083
## 908-686-7300



JOB #    129046

Filed and Attested by
PROTHONOTARY
08 AUG 2014 01:49 pm
J. OSTROWSKI

PLAINTIFF

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

ALVARO R. GUTIERREZ VS. PHARMACIA & UPJOHN CO. ET AL

DOCKET JULY TERM 2014 NO. 2351

DEFENDANT

AFFIDAVIT OF SERVICE

— — — — — — — — — — — — — —

FileRef#

**LEVIN FISHBEIN SEDRAN & BERMAN**
PATRICIA A. D' ANDREA
510 WALNUT ST. STE 500
PHILADELPHIA      PA      19106      Papers Served:  **WRIT OF SUMMONS**
(215) 592-1500

— — — — — — — — — — — — — —

Person served at location stated:
**PFIZER INC.**
235 E. 42ND ST.
NEW YORK NY 10017

Served Successfully ☒    Not Served ☐    Date 8·6·14    Time 10:26AM

Attempts: _____

_____ Delivered a copy to him/her personally

_____ Left a copy with a competent household member
over 14 years of age residing therein (indicate name
relationship at right)

Name of Person Served and relationship/title:

DANIEL FERRER
PARALEGAL

X  Left a copy with a person authorized to accept service, e.g., managing
agent, registered agent, etc.
(indicate name .official title at right)

Description of Person Accepting Service:

Sex: MALE    Age: 30-40    Weight 175-185    Skin Color: WHITE    Hair Color: BLACK

Military Service I asked the person whether recipient was in active military service of the United States or the State of New Jersey in any
activity whatever and received a negative reply. Recipient wore civilian clothes and no military uniform. The source of my information
and the grounds of my belief are the conversation and observation above narrated.

Subscribed and Sworn to me this
_____ day of ____ 2014

Notary Signature

JOSELYN TRIGUEROS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires October 18, 2018

I Daniel Batista, at the time of service a competent
adult not having a direct interest in the litigation. I declare under penalty of
perjury that the foregoing is true and correct.

Signature of Process Service

New Jersey Lawyers Service
2333 U.S. Hwy 22 West
Union, New Jersey 07083
908-686-7300



JOB #    129045

PLAINTIFF

ALVARO R. GUTIERREZ VS. PHARMACIA & UPJOHN CO. ET AL

DEFENDANT

**COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY**
**DOCKET JULY TERM 2014 NO. 2351**

AFFIDAVIT OF SERVICE

FileRef#

**LEVIN FISHBEIN SEDRAN & BERMAN**
PATRICIA A. D' ANDREA
510 WALNUT ST. STE 500
PHILADELPHIA    PA    19106
(215) 592-1500

Papers Served:  **WRIT OF SUMMONS**

Person served at location stated:
**PHARMACIA LLC**
235 E. 42ND ST.
NEW YORK NJ 10017

Served Successfully [X]    Not Served ☐    Date 8·6·14    Time 10:26AM

Attempts: _____

_____ Delivered a copy to him/her personally

_____ Left a copy with a competent household member
over 14 years of age residing therein (indicate name _
relationship at right)

__X__ Left a copy with a person authorized to accept service, e.g., managing
agent, registered agent, etc.
(indicate name _official title at right)

Name of Person Served and relationship/title:

DANIEL FERRER
PARALEGAL

Description of Person Accepting Service:

Sex: MALE    Age: 30-40    Weight: 175-185    Skin Color: WHITE    Hair Color: BLACK

Military Service I asked the person whether recipient was in active military service of the United States or the State of New Jersey in any
activity whatever and received a negative reply. Recipient wore civilian clothes and no military uniform. The source of my information
and the grounds of my belief are the conversation and observation above narrated.

Subscribed and Sworn to me this
_8__ day of _Aug__ 2014

Notary Signature

I _Daniel Batota_, at the time of service a competent
adult not having a direct interest in the litigation. I declare under penalty of
perjury that the foregoing is true and correct.

Signature of Process Service

JOSELYN TRIGUEROS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires October 18, 2018

Case ID: 140702351

# New Jersey Lawyers Service
## 2333 U.S. Hwy 22 West
## Union, New Jersey 07083
## 908-686-7300



JOB #    129044

PLAINTIFF

ALVARO R. GUTIERREZ VS. PHARMACIA & UPJOHN CO. ET AL

DEFENDANT

**COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY**
DOCKET JULY TERM 2014 NO. 2351

AFFIDAVIT OF SERVICE

FileRef#

**LEVIN FISHBEIN SEDRAN & BERMAN**
PATRICIA A. D' ANDREA
510 WALNUT ST. STE 500
PHILADELPHIA    PA    19106
(215) 592-1500

Papers Served: **WRIT OF SUMMONS**

Person served at location stated:
**PHARMACIA & UPJOHN CO.**
235 E. 42ND ST.
NEW YORK NY 10017

Served Successfully ☒    Not Served ☐    Date 8·6·14    Time 10:26AM

Attempts: _____

_____ Delivered a copy to him/her personally

_____ Left a copy with a competent household member over 14 years of age residing therein (indicate name relationship at right)

Name of Person Served and relationship/title:

DANIEL FERRER
PARALEGAL

__X__ Left a copy with a person authorized to accept service, e.g., managing agent, registered agent, etc. (indicate name .official title at right)

Description of Person Accepting Service:

Sex: Male    Age: 30-40    Weight: 175-185    Skin Color: WHITE    Hair Color: BLACK

Military Service I asked the person whether recipient was in active military service of the United States or the State of New Jersey in any activity whatever and received a negative reply. Recipient wore civilian clothes and no military uniform. The source of my information and the grounds of my belief are the conversation and observation above narrated.

Subscribed and Sworn to me this
__8__ day of Aug 2014

Notary Signature

JOSELYN TRIGUEROS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires October 18, 2018

I Daniel Batista, at the time of service a competent adult not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

_____
Signature of Process Service

Case ID: 140702351

**IN THE COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY**

**DLA PIPER LLP (US)**
By: Lauren Marie Wilchek
Attorney I.D. No. 207101
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
(215) 656-3300
(215) 656-3301 (*fax*)
lauren.wilchek@dlapiper.com



| | | |
|---|---|---|
| ALVARO ROMAN GUTIERREZ and | : | |
| YAMILETH D. GUTIERREZ, | : | July Term 2014 |
| | : | |
| Plaintiffs, | : | Case ID: 140702351 |
| | : | |
| v. | : | |
| | : | |
| PHARMACIA & UPJOHN CO.; | : | |
| PHARMACIA LLC; | : | |
| PFIZER INC.; PERRIGO COMPANY; and | : | |
| PADDOCK LABORATORIES INC., | : | |
| | : | |
| Defendants. | | |

**PRAECIPE FOR RULE TO FILE A COMPLAINT**

TO THE PROTHONOTARY:

Please issue a Rule on Plaintiff to file a Complaint in the above-captioned matter within

twenty (20) days after service of the Rule, or suffer a judgment of non pros.

**DLA PIPER LLP (US)**

/s/ Lauren Marie Wilchek
Lauren Marie Wilchek
Attorney for Defendants
Pharmacia & Upjohn Co., Pharmacia LLC, and
Pfizer Inc.

Dated: August 27, 2014.

Case ID: 140702351

## **RULE**

AND NOW, this ____day of _____ 2014, a Rule is entered upon plaintiff to file a complaint herein within twenty (20) days after service hereof or suffer the entry of a judgment of non pros.

_____
Prothonotary

Case ID: 140702351

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing Praecipe for Rule to File a

Complaint was caused to be served by first-class mail, postage prepaid, this 27th day of August

2014, on the following:


Laurence S. Berman, Esquire
Michael M. Weinkowitz, Esquire
Patricia A. D'Andrea, Esquire
Levin Fishbein Sedran & Berman
510 Walnut St. STE 500
Philadelphia, PA 19106
*Counsel for Plaintiffs*


/s/ Lauren Marie Wilchek
Lauren Marie Wilchek

Case ID: 140702351

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## COURT OF COMMON PLEAS OF PHILADELPHIA

*Filed and Attested by
PROTHONOTARY
05 SEP 2014 02:13 pm
E. MASCUILLI*

ALVARO ROMAN GUTIERREZ and
YAMILETH D. GUTIERREZ, h/w,

Plaintiffs,                                                    July Term, 2014

v.                                                            No. 2351

PHARMACIA & UPJOHN CO., PHARMACIA
LLC, PFIZER INC., PERRIGO COMPANY,
PADDOCK LABORATORIES INC.,

Defendants.

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association
Lawyer Referral
and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197**

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197**

32/4: 6

Case ID: 140702351

**LEVIN, FISHBEIN, SEDRAN & BERMAN**
**BY:    Laurence S. Berman, Esquire**
          **(Attorney ID No. 26965)**
          **Michael M. Weinkowitz, Esquire**
          **(Attorney ID No. 76033)**
**510 Walnut Street, Suite 500**
**Philadelphia, PA 19107**
**(215) 592-1500 / (215) 592-4663 (telecopier)**
LBerman@lfsblaw.com; MWeinkowitz@lfsblaw.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| **ALVARO ROMAN GUTIERREZ and YAMILETH D. GUTIERREZ, h/w,**<br><br>               *Plaintiff,*<br><br><br>**v.**<br><br>**PHARMACIA & UPJOHN CO., PHARMACIA LLC, PFIZER INC., PERRIGO COMPANY, PADDOCK LABORATORIES INC.,**<br><br>               *Defendants.* | **COURT OF COMMON PLEAS**<br><br>**PHILADELPHIA COUNTY**<br><br><br>**JULY TERM, 2014**<br>**NO. 2351**<br><br><br>**COMPLAINT AND  DEMAND FOR JURY TRIAL** |

        Plaintiffs, by and through counsel, and for their Complaint against Defendants, allege as follows:

1

Case ID: 140702351

## I.    PARTIES

### A.  PLAINTIFFS

1.      Plaintiffs, Alvaro Roman Gutierrez and Yamileth D. Gutierrez (Plaintiffs), reside at 81 Albert Street, Woodbridge, New Jersey.

2.      Plaintiff Alvaro Roman Gutierrez ingested Depo Testosterone a/k/a Testosterone Cypionate, and suffered an inferior wall ST segment elevation myocardial infarction.

### B.  DEFENDANTS

3.      Defendant Pharmacia & Upjohn Co. is, and at all times relevant was, a corporation organized and existing under the laws of the state of New York and maintains its principal place of business at 235 East 42nd Street, New York NY 10017.

4.      Defendant Pharmacia LLC is, and at all times relevant was, a corporation organized and existing under the laws of the state of Delaware and maintains its principal place of business at 235 East 42nd Street, New York NY 10017.

5.      Defendant Pfizer, Inc. is, and at all times relevant was, a corporation organized and existing under the laws of the state of New York and maintains its principal place of business at 235 East 42nd Street, New York NY 10017.

6.      Defendant Perrigo Company is, and at all times relevant was, a corporation organized and existing under the laws of the State of Michigan and maintains its headquarters and principal place of business at 601 Abbott Road, East Lansing, Michigan.

2

Case ID: 140702351

7.     Defendant Paddock Laboratories (Paddock) is, and at all times relevant was, a wholly owned subsidiary of Perrigo and maintains its headquarters and principal place of business at 3940 Quebec Avenue North, Minneapolis.

8.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

9.     At all times relevant, Defendants were engaged in the business of designing, testing, studying, researching, evaluating, endorsing, formulating, compounding, manufacturing, producing, processing, assembling, inspecting distributing, marketing, labeling, promoting, advertising, packaging, selling, prescribing, or otherwise placing Depo Testosterone a/k/a Testosterone Cypionate in the stream of interstate commerce of the United States, including the Commonwealth of Pennsylvania, either directly or indirectly through third parties, subsidiaries or related entities.

## II.     JURISDICTION AND VENUE

10.     Jurisdiction over Defendants is based on 42 Pa. C.S.A § 5301 and is therefore proper in this Court.

11.     Venue is proper pursuant to Pa. R.C.P. No. 2179.  Defendants regularly conduct substantial business in Philadelphia County, Pennsylvania.

12.     The amount in controversy exceeds, exclusive of interest and costs, the sum of one hundred fifty thousand ($150,000.00) dollars.

Case ID: 140702351

III.     **FACTUAL ALLEGATIONS**

    A.  **NATURE OF THE CASE**

    13.    Hypogonadism is a specific condition of the sex glands, which in men may involve the diminished production or nonproduction of testosterone.

    14.    In or about 1999, it was estimated that hypogonadism was estimated to affect approximately "one million American men.

    15.    In 2000, pharmaceutical companies involved in testosterone replacement therapy estimated that the market was "four to five million American men."  By 2003, the number increased to "up to 20 million men."  However, a study published in the Journal of the American Medical Association ("JAMA") in August 2013 entitled "Trends in Androgen Prescribing in the United States, 2001-2011" indicated that many men who get testosterone prescriptions have no evidence of hypogonadism. For example, one third of men prescribed testosterone had a diagnosis of fatigue, and one quarter of men did not even have their testosterone levels tested before they received a testosterone prescription.

    16.    Defendants and other unnamed pharmaceutical corporations involved in the manufacture, sale, distribution, marketing and promotion of testosterone replacement therapy products collectively coordinated a massive marketing, promotional and advertising campaign designed to convince men that they suffer from low testosterone. Defendants and the other companies orchestrated a national disease awareness media blitz that purported to educate male consumers about the signs of low testosterone. The marketing campaign consisted of television

4

Case ID: 140702351

advertisements, promotional literature placed in healthcare providers' offices and distributed to users, and online media.

17.     The coordinated marketing, promotion and advertising suggest that various symptoms often associated with other conditions may be caused by low testosterone and encourage men to discuss testosterone replacement therapy with their doctors if they experienced any of these "symptoms." These "symptoms" include listlessness, increased body fat, and moodiness—all general symptoms that is often a result of aging, weight gain, or lifestyle, rather than low testosterone.

18.     Since the FDA approved Depo Testosterone a/k/a Testosterone Cypionate, Defendants and other unnamed pharmaceutical corporations have also sought to convince primary care physicians that low testosterone levels is widely under-diagnosed, and that conditions associated with normal aging could be caused by low testosterone levels.

19.     While running their disease awareness campaign, Defendants promoted their products as easy to use hormone replacement therapy. Defendants promote their products as convenient with less risk of spreading testosterone to others like competitors of testosterone under arm gels like Androgel.

20.     Defendants successfully created a robust and previously non-existent market for their drug. Defendants and other unnamed pharmaceutical corporations involved in the manufacture, sale, distribution, marketing and promotion of testosterone replacement therapy products collectively spent millions, if not $100 million, in promoting testosterone replacement

5

Case ID: 140702351

therapy and to convince millions of men to discuss testosterone placement with their doctors, and consumers and physicians relied on Defendants' promises of safety and ease.

21.     Millions were also spent by Defendants and other unnamed pharmaceutical corporations on the unbranded marketing, advertising and promotion. Defendants and other unnamed pharmaceutical corporations involved in the manufacture, sale, distribution, marketing and promotion of testosterone replacement therapy products collectively had sales over $2 Billion in 2013. Sales of testosterone replacement therapy have more than doubled since 2006 and is expected to triple to $5 billion by 2017, according to forecasts by Global Industry Analysts.    Shannon Pettypiece, *Is Testosterone Drugs the Next Viagra?*, May 10, 2012, Bloomberg Businessweek, *available at*: http://www.businessweek.com/articles/2012-05-10/is-testosterone-drugs-the-next-viagra.

22.     The marketing program sought to create the image and belief by consumers and physicians that low testosterone affected a large number of men in the United States and that the use of testosterone replacement products like Depo Testosterone a/k/a Testosterone Cypionate is safe for human use, even though Defendants knew these statements to be false, and even though Defendants had no reasonable grounds to believe them to be true.

23.     There have been a number of studies concluding that testosterone therapy causes a sudden increase in hematocrit, hemoglobin and estradiol, and associating its use with increased the risk of heart attacks and strokes and blood clots. Defendants knew or in the exercise of reasonable care should have known that their product, Depo Testosterone a/k/a Testosterone

6

Case ID: 140702351

Cypionate, was defectively designed, unreasonable dangerous in normal use, and highly likely to cause injury or death, but they failed to provide adequate warnings about these known risks.

24. This case involves the prescription drug Depo Testosterone a/k/a Testosterone Cypionate a/k/a Testosterone Cypionate, which is manufactured, sold, distributed, marketed and promoted by Defendants as a testosterone replacement therapy.

25. Defendants, respectively, misrepresented that Depo Testosterone a/k/a Testosterone Cypionate is a safe and effective treatment for hypogonadism or "low testosterone," when in fact the drug causes serious medical problems, including life-threatening cardiac events, strokes, and thrombolytic events.

26. Defendants and other unnamed pharmaceutical corporations involved in the manufacture, sale, distribution, marketing and promotion of testosterone replacement therapy products collectively engaged in aggressive direct-to-consumer and physician promotion, marketing and advertising to create and expand a market for testosterone replacement therapy including Defendants' Depo Testosterone a/k/a Testosterone Cypionate products and further engaged in an aggressive unbranded "disease awareness" campaign to alert men that they might be suffering from "Low T."

27. As a result of this "disease mongering," as termed by Dr. Adriene Fugh-Berman of Georgetown University Medical Center, individuals diagnosed with Low T has increased exponentially. This has directly related to Depo Testosterone a/k/a Testosterone Cypionate's sales increasing to over several hundred million dollars.

7

Case ID: 140702351

28.     However, consumers of Depo Testosterone a/k/a Testosterone Cypionate were misled as to the drug's safety and efficacy, and as a result have suffered injuries including life-threatening cardiac events, strokes, and thrombolytic events.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

29.     The Food and Drug Administration approved Depo Testosterone a/k/a Testosterone Cypionate in July, 1979.

30.     Depo Testosterone a/k/a Testosterone Cypionate is an intramuscular injection, containing testosterone cypionate which is the oil-soluble 17 (beta)-cyclopentylpropionate ester of the androgenic hormone testosterone.

31. Testosterone is a primary androgenic hormone responsible for normal growth, development of the male sex organs, and maintenance of secondary sex characteristics.

32.     The hormone plays a role in sperm production, fat distribution, maintenance of muscle strength and mass, and sex drive.

33.     In men, testosterone levels normally begin a gradual decline after the age of thirty.

34.     The average testosterone levels for most men range from 300 to 1,000 nanograms per deciliter of blood.  However, testosterone levels can fluctuate greatly depending on many factors, including sleep, time of day, and medication.  Resultantly, many men who fall into the hypogonadal range one day will have normal testosterone levels the next.

8

Case ID: 140702351

35.     Depo Testosterone a/k/a Testosterone Cypionate may produce undesirable side-effects to patients who use the drug, including but not limited to, myocardial infarction, stroke, deep vein thrombosis, pulmonary embolism and death.

36.     In some patient populations, Depo Testosterone a/k/a Testosterone Cypionate use may increase the incidence of myocardial infarctions and death by over 500%.

37.     Defendants' marketing strategy along with that of and other unnamed pharmaceutical corporations involved in the manufacture, sale, distribution, marketing and promotion of testosterone replacement therapy products collectively has been to aggressively market and sell their products by misleading potential users about the prevalence and symptoms of low testosterone and by failing to protect users from serious dangers that Defendants knew, or should have known, would result from use of its products.

38.     Defendants successfully marketed Depo Testosterone a/k/a Testosterone Cypionate by undertaking a "disease awareness" marketing campaign. This campaign sought to create a consumer perception that low testosterone is prevalent amount U.S. men and that symptoms previously associated with other physical and mental conditions, such as aging, stress, depression, and lethargy was actually attributable to "Low-T."

39.     Defendants' and other unnamed pharmaceutical corporations involved in the manufacture, sale, distribution, marketing and promotion of testosterone replacement therapy products collectively engaged in an advertising program that sought to create the image and belief by consumers and their physicians that the use of Depo Testosterone a/k/a Testosterone Cypionate and other testosterone replacement products was a safe method of alleviating their

9

Case ID: 140702351

symptoms, had few side effects and would not interfere with their daily lives, even though Defendants knew or should have known these to be false. The Defendants had no reasonable grounds to believe them to be true.

40.     Defendants purposefully downplayed, understated and outright ignored the health hazards and risks associated with using Depo Testosterone a/k/a Testosterone Cypionate. Defendants and other unnamed pharmaceutical corporations involved in the manufacture, sale, distribution, marketing and promotion of testosterone replacement therapy products collectively deceived potential Depo Testosterone a/k/a Testosterone Cypionate users by relaying positive information through the press, including testimonials from retired professional athletes, and manipulating hypogonadism statistics to suggest widespread disease prevalence, while downplaying known adverse and serious health effects.

41.     Defendants concealed material relevant information from potential Depo Testosterone a/k/a Testosterone Cypionate users and minimized user and prescriber concern regarding the safety of Depo Testosterone a/k/a Testosterone Cypionate.

42.     In particular, in the warnings Defendants give in their commercials, online and print advertisements, Defendants fail to mention any potential cardiac or stroke side effects and falsely represents that Defendants adequately tested Depo Testosterone a/k/a Testosterone Cypionate for all likely side effects.

43.     As a result of Defendants' advertising and marketing, and representations about its product, men in the United States pervasively seek out prescriptions for Depo Testosterone a/k/a Testosterone Cypionate. If Plaintiff had known the risks and dangers associated with Depo

10

Case ID: 140702351

Testosterone a/k/a Testosterone Cypionate, Plaintiff would not have used Depo Testosterone a/k/a Testosterone Cypionate and consequently would not have been subject to its serious side-effects.

**FEDERAL STANDARDS AND REQUIREMENTS**

Upon information and belief, the Defendants have or may have failed to comply with all federal standards and requirements applicable to the sale of their product, including but not limited to, violations of various sections and subsections of the United States Code and Code of Federal Regulations.

**IV.     CLAIMS FOR RELIEF**

**COUNT I**

**STRICT LIABILITY-  MANUFACTURING DEFECT**

44.     Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

45.     Depo Testosterone a/k/a Testosterone Cypionate was designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendants.

46.     When it left the control of Defendants, Depo Testosterone a/k/a Testosterone Cypionate was expected to, and did reach Plaintiff without substantial change from the condition in which it left Defendants' control.

47.     Depo Testosterone a/k/a Testosterone Cypionate was defective when it left Defendants' control and was placed in the stream of commerce, in that there were foreseeable

Case ID: 140702351

risks that exceeded the benefits of the products and/or that it deviated from product specifications and/or applicable federal requirements, and posed a risk of serious injury and death.

48.     Specifically, Depo Testosterone a/k/a Testosterone Cypionate was more likely to cause heart attacks, strokes, the development of deep vein thrombosis and/or pulmonary embolism, and death than other similar medications.

49.     The Depo Testosterone a/k/a Testosterone Cypionate ingested by Plaintiff was in substantially the same condition it was in when it left control of Defendants and any changes or modifications were foreseeable by Defendants.

50.     Plaintiff and his healthcare providers did not misuse or materially alter the Depo Testosterone a/k/a Testosterone Cypionate.

51.     As a direct and proximate result of the Plaintiff's use of Depo Testosterone a/k/a Testosterone Cypionate, he suffered serious physical injury, harm, damages and economic loss, and will continue to suffer such harm, damages and economic loss in the future.

52.     Defendants are strictly liable to Plaintiff for designing, creating, manufacturing, distributing, selling, and placing Depo Testosterone a/k/a Testosterone Cypionate into the stream of commerce, and for all damages caused to Plaintiffs by the use Depo Testosterone a/k/a Testosterone Cypionate because the product was defective.

53.     Defendants' actions and omissions as alleged in this Complaint constitute a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

12

Case ID: 140702351

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II

## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

54.     Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

55.     Depo Testosterone a/k/a Testosterone Cypionate was not merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by Plaintiffs.

56.     Defendants placed Depo Testosterone a/k/a Testosterone Cypionate into the stream of commerce with wanton and reckless disregard for the public safety.

57.     Depo Testosterone a/k/a Testosterone Cypionate was defective in design in that, when it left Defendants' control, the foreseeable risks of the product exceeded the benefits associated with its design, and it was more dangerous than an ordinary consumer or ordinary healthcare provider would expect.

58.     The foreseeable risks associated with Depo Testosterone a/k/a Testosterone Cypionate's design include the fact that its designs is more dangerous than a reasonably prudent consumer or healthcare provider would expect when used in an intended or reasonably foreseeable manner.

Case ID: 140702351

59.     Depo Testosterone a/k/a Testosterone Cypionate was unsafe, defective, and inherently dangerous conditions, which was unreasonably dangerous to its users and in particular, Plaintiffs.

60.     Depo Testosterone a/k/a Testosterone Cypionate was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that it was defective and unsafe, even when used as instructed.

61.     The nature and magnitude of the risk of harm associated with the designs of Depo Testosterone a/k/a Testosterone Cypionate, including the risk of suffering a heart attack, stroke, developing a deep vein thrombosis and pulmonary embolism, and death, is high in light of the intended and reasonably foreseeable use of Depo Testosterone a/k/a Testosterone Cypionate.

62.     The risks of harm associated with the design of Depo Testosterone a/k/a Testosterone Cypionate are higher than necessary.

63.     It is highly unlikely that Depo Testosterone a/k/a Testosterone Cypionate users would be aware of the risks associated with Depo Testosterone a/k/a Testosterone Cypionate through either warnings, general knowledge or otherwise, and Plaintiffs specifically were not aware of these risks.

64.     The designs did not conform to any applicable public or private product standard that was in effect when Depo Testosterone a/k/a Testosterone Cypionate left the Defendants' control.

14

Case ID: 140702351

65.      Depo Testosterone a/k/a Testosterone Cypionate's design is more dangerous than a reasonably prudent consumer would expect when used in their intended or reasonably foreseeable manner. It was more dangerous than Plaintiffs expected.

66.      The intended or actual utility of Depo Testosterone a/k/a Testosterone Cypionate is not of such benefit to justify the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

67.      At the time Depo Testosterone a/k/a Testosterone Cypionate left Defendants' control, it was both technically and economically feasible to have alternative designs that would not cause heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death or an alternative designs that would have substantially reduced the risk of these injuries.

68.      It was both technically and economically feasible to provide a safer alternative product that would have prevented the harm suffered by Plaintiffs.

69.      The unreasonably dangerous nature of Depo Testosterone a/k/a Testosterone Cypionate caused serious harm to Plaintiffs.

70.      As a direct and proximate result of the Plaintiff's use of Depo Testosterone a/k/a Testosterone Cypionate, which was designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendants, Plaintiffs suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

Case ID: 140702351

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III

## NEGLIGENT FAILURE TO WARN

71.     Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

72.     Defendants had a duty to warn Plaintiff and his healthcare providers of the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death associated Depo Testosterone a/k/a Testosterone Cypionate.

73.     Defendants knew, or in the exercise or reasonable care should have known, about the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

74.     Defendants failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death, in light of the likelihood that their products would cause these injuries.

75.     Defendants failed to update warnings based on information received from product surveillance after Depo Testosterone a/k/a Testosterone Cypionate was first approved by the FDA and marketed, sold, and used in the United States and throughout the world.

16

Case ID: 140702351

76.    A manufacturer exercising reasonable care would have updated its warnings on the basis of reports of injuries to men using Depo Testosterone a/k/a Testosterone Cypionate after FDA approval.

77.    When it left Defendants' control, Depo Testosterone a/k/a Testosterone Cypionate was defective and unreasonably dangerous for failing to warn of the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

78.    Plaintiff used Depo Testosterone a/k/a Testosterone Cypionate for its approved purpose and in a manner normally intended and reasonably foreseeable by the Defendants.

79.    Plaintiff and healthcare providers could not, by the exercise of reasonable care have discovered the defects or perceived their danger because the risks were not open or obvious.

80.    Defendants, as the manufacturers and distributors of Depo Testosterone a/k/a Testosterone Cypionate, are held to the level of knowledge of an expert in the field.

81.    The warnings that were given by Defendants were not accurate or clear, and were false and ambiguous.

82.    The warnings that were given by the Defendants failed to properly warn physicians of the risks associated with Depo Testosterone a/k/a Testosterone Cypionate, subjecting Plaintiffs to risks that exceeded the benefits.  Plaintiff, individually and through his physician, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

83.    Defendants had a continuing duty to warn Plaintiff and his prescriber of the dangers associated with its product.

17

Case ID: 140702351

84. Had Plaintiff or his healthcare providers received adequate warnings regarding the risks associated with the use of the Depo Testosterone a/k/a Testosterone Cypionate, he would not have used it.

85. As a direct and proximate result of the Plaintiff's use of Depo Testosterone a/k/a Testosterone Cypionate and Plaintiff's reliance on Defendants' representations regarding the character and quality of the products and Defendants' failure to comply with federal requirements, Plaintiffs suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV

## <u>NEGLIGENCE</u>

86. Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

87. Defendants had a duty to exercise reasonable and ordinary care in the design, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotion, and distribution of Depo Testosterone a/k/a Testosterone Cypionate into the stream of commerce, including a duty to assure that their products did not pose an undue risk of bodily harm and adverse events, and to properly warn of all risks, and comply with federal requirements.

18

Case ID: 140702351

88.    Defendants failed to exercise reasonable and ordinary care in the design, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotion and distribution of Depo Testosterone a/k/a Testosterone Cypionate into the stream of commerce in that Defendants knew or should have known that the product caused significant bodily harm and was not safe for use by consumers.  Specifically, Defendants failed to properly and thoroughly:

a.    Test Depo Testosterone a/k/a Testosterone Cypionate before releasing it into the market;

b.    Analyze the data resulting from the pre-marketing tests of Depo Testosterone a/k/a Testosterone Cypionate;

c.    Conduct sufficient post-market testing and surveillance of Depo Testosterone a/k/a Testosterone Cypionate; and

d.    Provide appropriate warnings for consumers and healthcare providers including disclosure of the known or potential risks or true or suspected rates of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

89.    Despite the fact that Defendants knew or should have known that their products posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Depo Testosterone a/k/a Testosterone Cypionate for use by consumers and continued to fail to comply with federal requirements.

90.    Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above, including the failure to comply with federal requirements.

19

Case ID: 140702351

91.     It was foreseeable that Defendants' products, as designed, would cause serious injury to consumers, including Plaintiffs.

92.     As a direct and proximate result of Defendants' negligence, Plaintiffs suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

93.     Defendants' conduct as described above, including but not limited to their failure to adequately design, test, and manufacture, as well as their continued marketing and distribution of Depo Testosterone a/k/a Testosterone Cypionate when they knew or should have known of the serious health risks they created and the failure to comply with federal requirements, evidences a flagrant disregard of human life so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT V

## **BREACH OF EXPRESS WARRANTY**

94.     Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

95.     Defendants expressly warranted that Depo Testosterone a/k/a Testosterone Cypionate was safe and effective for the treatment of low testosterone, and did not disclose the material risks that Depo Testosterone a/k/a Testosterone Cypionate could cause heart attacks,

20

Case ID: 140702351

strokes, deep vein thrombosis, pulmonary embolism and/or death. The representations were not justified by the performance of Depo Testosterone a/k/a Testosterone Cypionate.

96.     Members of the consuming public, including consumers such as Plaintiff, and his healthcare providers, were intended third party beneficiaries of the warranty.

97.     Plaintiff and his healthcare providers reasonably relied on these express representations.

98.     The Depo Testosterone a/k/a Testosterone Cypionate manufactured and sold by Defendants did not conform to these express representations because they caused serious injury to the Plaintiff when used as recommended and directed, and these risks was not disclosed to Plaintiff or his healthcare providers.

99.     As a direct and proximate result of Defendants' breach of warranty, Plaintiffs suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VI

## BREACH OF IMPLIED WARRANTY

100.    Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

21

Case ID: 140702351

101. When Defendants designed, manufactured, marketed, sold, and distributed their Depo Testosterone a/k/a Testosterone Cypionate for use by Plaintiffs, Defendants knew of the use for which it was intended and impliedly warranted the product to be of merchantable quality and safe for such use and that its design, manufacture, labeling, and marketing complied with all applicable federal requirements.

102. Plaintiff and his physicians reasonably relied upon the Defendants' representations of the product's merchantable quality and that it was safe for its intended use, and upon Defendants' implied warranty, including that it was in compliance with all federal requirements.

103. Contrary to such implied warranty, Depo Testosterone a/k/a Testosterone Cypionate was not of merchantable quality or safe for its intended use, because the product was defective, as described herein, and failed to comply with federal requirements.

104. As a direct and proximate result of Defendants' breach of warranty, Plaintiffs suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

Case ID: 140702351

## COUNT VII

## FRAUD

105.    Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

106.    Defendants, from the time they first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed Depo Testosterone a/k/a Testosterone Cypionate, and up to the present, willfully deceived Plaintiffs by concealing from them, physicians and the general public, the true facts concerning Depo Testosterone a/k/a Testosterone Cypionate, which the Defendants had a duty to disclose.

107.    At all times herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of Depo Testosterone a/k/a Testosterone Cypionate and willfully deceived Plaintiffs, physicians and the general public as to the benefits, health risks and consequences of using Depo Testosterone a/k/a Testosterone Cypionate.  Defendants knew of the foregoing, that Depo Testosterone a/k/a Testosterone Cypionate was not safe, fit and effective for human consumption, that using Depo Testosterone a/k/a Testosterone Cypionate is hazardous to health, and that Depo Testosterone a/k/a Testosterone Cypionate has serious propensity to cause serious injuries to users, including but not limited to the injuries Plaintiffs suffered.

108.    Defendants concealed and suppressed the true facts concerning Depo Testosterone a/k/a Testosterone Cypionate with the intent to defraud Plaintiffs, in that Defendants knew that physicians would not prescribe Depo Testosterone a/k/a Testosterone

23

Case ID: 140702351

Cypionate, and Plaintiff would not have used Depo Testosterone a/k/a Testosterone Cypionate, if they were aware of the true facts concerning the dangers.

109.     As a result of Defendants' fraudulent and deceitful conduct, Plaintiff suffered injuries and damages as alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VIII

## NEGLIGENT MISREPRESENTATION

110.     Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

111.     From the time Depo Testosterone a/k/a Testosterone Cypionate was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants made misrepresentations to Plaintiffs, physicians and the general public, including but not limited to the misrepresentation that Depo Testosterone a/k/a Testosterone Cypionate was safe, fit and effective for human use.   At all times mentioned, Defendants conducted sales and marketing campaign to promote the sale of Depo Testosterone a/k/a Testosterone Cypionate and willfully deceived Plaintiffs, physicians and the general public as to the health risks and consequences of the use of Depo Testosterone a/k/a Testosterone Cypionate.

24

Case ID: 140702351

112.     The Defendants made the foregoing representation without any reasonable ground for believing them to be true. These representations was made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance and the prescription, purchase and use of the subject products.

113.     The representations by the Defendants was in fact false, in that Depo Testosterone a/k/a Testosterone Cypionate is not safe, fit and effective for human consumption, using Depo Testosterone a/k/a Testosterone Cypionate is hazardous to health, Depo Testosterone a/k/a Testosterone Cypionate has a propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiffs.

114.     The foregoing representations by Defendants, and each of them, were made with the intention of inducing reliance and the prescription, purchase and use of Depo Testosterone a/k/a Testosterone Cypionate.

115.     In reliance of the misrepresentations by the Defendants, and each of them, Plaintiff was induced to purchase and use of Depo Testosterone a/k/a Testosterone Cypionate.  If Plaintiff had known of the true facts and the facts concealed by the Defendants, Plaintiff would not have used Depo Testosterone a/k/a Testosterone Cypionate. The reliance of Plaintiff upon Defendants' misrepresentations was justified because such misrepresentations was made and conducted by individuals and entities that were in a position to know the true facts.

116.     As a result of the foregoing negligent misrepresentations by Defendants, Plaintiff suffered injuries and damages as alleged herein.

25

Case ID: 140702351

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IX

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

117.    Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

118.    In ignoring Depo Testosterone a/k/a Testosterone Cypionate's risks and not disclosing Depo Testosterone a/k/a Testosterone Cypionate's risk of causing heart attacks, strokes, and even death, Defendants acted in an extreme and outrageous manner.

119.    Defendants should have known and/or did know that their conduct could cause and would cause emotional distress to men who took Depo Testosterone a/k/a Testosterone Cypionate and suffered a heart attack, suffered a stroke, and/or died and to the victim's loved ones.

120.    Depo Testosterone a/k/a Testosterone Cypionate's dangers caused a risk of illness and bodily harm to Plaintiff and actually did cause illness and bodily harm to Plaintiff.

121.    Defendants intentionally caused, or recklessly disregarded the risks of causing, the emotional distress associated with having a stroke.

122.    Plaintiff has suffered severe emotional distress from finding out that his inferior wall ST segment elevation myocardial infarction was preventable, that it was caused by Depo

26

Case ID: 140702351

Testosterone a/k/a Testosterone Cypionate, and that the inferior wall ST segment elevation myocardial infarction caused extensive damage, including permanent, ongoing, and profound damage to his health, increased risk for a variety of future serious medical conditions, and even death.

123.    Defendants' outrageous conduct in not disclosing Depo Testosterone a/k/a Testosterone Cypionate's risks is the actual and proximate cause of Plaintiff's distress.

124.    As a direct and proximate result of Defendants' wrongful actions, Plaintiff has suffered and continues to suffer emotional distress.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT X

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

125.    Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

126.    Defendants owed a duty to act with reasonable care in the design, manufacturing, and marketing/labeling of Depo Testosterone a/k/a Testosterone Cypionate.

127.    Defendants breached their duties by releasing to the public a product that was inherently dangerous and by not warning of the product's risks.

27

Case ID: 140702351

128.     Defendants should have known and/or did know that their conduct could cause and would cause emotional distress to people who took Depo Testosterone a/k/a Testosterone Cypionate and suffered a heart attack, stroke, and/or death as a result.

129.     Depo Testosterone a/k/a Testosterone Cypionate's dangers caused a risk of illness and bodily harm to Plaintiff and actually did cause illness and bodily harm to Plaintiff.

130.     Defendants' breaches caused Plaintiff's inferior wall ST segment elevation myocardial infarction and the resultant, lifelong damage associated with that.

131.     Plaintiff's condition caused emotional distress. Therefore, as a direct and proximate result of Defendants' wrongful actions and breaches, Plaintiff has suffered and continues to suffer emotional distress.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XI

## LOSS OF CONSORTIUM

132.     Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

133.     Plaintiff, Yamileth D. Gutierrez, claims loss of consortium, companionship, services, obligation for medical expenses to the broadest extent available under the law, pleading same pursuant to all substantive law that applies to this case, including but not limited to the law

28

Case ID: 140702351

of the State of New Jersey, as may be determined by choice of law principles regardless of those arising under statute and/or common law.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XII

## PUNITIVE DAMAGES ALLEGATIONS

134.    Plaintiffs incorporate by reference each preceding and succeeding paragraph of this Complaint as if set forth fully at length herein.

135.    The respective acts, conduct, and omissions of Defendants, as alleged throughout this Complaint was willful and malicious. Defendants committed these acts with a conscious disregard for the rights of Plaintiffs and other Depo Testosterone a/k/a Testosterone Cypionate users and for the primary purpose of increasing Defendants' profits from the sale and distribution of Depo Testosterone a/k/a Testosterone Cypionate. Defendants' respective outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

136.    Prior to the respective manufacturing, sale, and distribution of Depo Testosterone a/k/a Testosterone Cypionate, Defendants knew that their drug was in defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further,

Case ID: 140702351

Defendants, through their respective officers, directors, managers, and agents, knew that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiffs and as such, Defendants unreasonably subjected consumers of said drugs to risk of injury or death from using Depo Testosterone a/k/a Testosterone Cypionate.

137.    Despite its knowledge, Defendants, acting through its officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in their respective drugs and failed to warn the public, including Plaintiffs, of the extreme risk of injury occasioned by said defects inherent in their drugs.  Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of their drugs knowing these actions would expose persons to serious danger in order to advance Defendants' pecuniary interest and monetary profits.

138.    Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiffs, entitling Plaintiffs to exemplary damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory, treble, and punitive damages, including but not limited to, damages for loss of consortium, companionship, support and maintenance, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

Case ID: 140702351

## V.    JURY TRIAL DEMANDED

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury to the extent permitted under the law.

## VI.    PRAYER FOR RELIEF

WHEREFORE**,** Plaintiffs demand judgment against the Defendants, jointly and severally, for damages, including exemplary damages if applicable, to which they are entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether under the common law and/or statutory law, including:

a.    judgment for Plaintiffs and against Defendants, jointly and severally;

b.    damages to compensate Plaintiffs for injuries sustained by Plaintiffs  as a result of the use of Depo Testosterone a/k/a Testosterone Cypionate;

c.    damages for Plaintiffs' past and future loss of income;

d.    damages to compensate Plaintiffs for physical pain and suffering;

e.    pre and post judgment interest at the lawful rate;

f.    exemplary, punitive and treble on all applicable Counts as permitted by the law;

g.    a trial by jury on all issues of the case;

h.    loss of consortium and all related damages, including but not limited to the cost of maintenance, support and medical expenses;

i.    an award of attorneys' fees; and

31

Case ID: 140702351

j.      for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the forgoing Prayer for Relief.

Respectfully submitted,

/s/ Laurence S. Berman
Laurence S. Berman (PA ID 26965)
Michael M. Weinkowitz (PA ID 76033)
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia PA 19106
(215) 592-1500/ phone
(215) 592-4663-fax
lberman@lfsblaw.com
mweinkowitz@lfsblaw.com
*Attorneys for Plaintiff*

Dated: September 4, 2014

32

Case ID: 140702351

## <u>VERIFICATION</u>

I, Laurence S. Berman, Esquire, hereby state that I am the attorney in this action and verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements therein are made subject to the penalties of 18 P.A. C.S.A. §4904 relating to unsworn falsification to authorities.


/s/ Laurence S. Berman_____
Laurence S. Berman

Date: September 4, 2014

33

Case ID: 140702351

# **EXHIBIT B**

## IN THE COURT OF COMMON PLEAS
## PHILADELPHIA COUNTY

ALVARO ROMAN GUTIERREZ and     :
YAMILETH D. GUTIERREZ,           :     July Term 2014
                              :
      Plaintiffs,                :     Case ID. 140702351
                              :
           v.                    :
                              :
PHARMACIA & UPJOHN CO.;        :
PHARMACIA LLC;                :
PFIZER INC.; PERRIGO COMPANY; and    :
PADDOCK LABORATORIES INC.,     :
                              :
      Defendants.

## NOTICE OF FILING NOTICE OF REMOVAL

Notice is hereby given that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants

Pharmacia & Upjohn Company LLC[1] and Pfizer Inc. filed with the United States District Court

for the Eastern District of Pennsylvania, a Notice of Removal of the above-captioned case from

the First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia County, Civil

Trial Division to the United States District Court for the Eastern District of Pennsylvania. A

copy of the Notice of Removal is attached hereto as Exhibit A.

Respectfully submitted this 1st day of October 2014.

                                    /s/ Lauren Wilchek
                                    Lauren Wilchek PA Bar No. 207101
                                    DLA Piper LLP (US)
                                    One Liberty Place
                                    1650 Market Street, Suite 4900
                                    Philadelphia, PA 19103
                                    Telephone: 215.656.2437
                                    Fax: 215.606.2137
                                    lauren.wilchek@dlapiper.com

---

[1] Pharmacia & Upjohn Company LLC is incorrectly referred to in the Complaint as "Pharmacia & Upjohn Company" (case caption and ¶3).

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2014, I served a copy of the foregoing via the Court's

electronic filing system and via first-class U.S. Mail, postage prepaid, to the following:

Laurence S. Berman, Esquire
Michael M. Weinkowitz, Esquire
Patricia A. D'Andrea, Esquire
Levin Fishbein Sedran & Berman
510 Walnut St. STE 500
Philadelphia, PA 19106
*Counsel for Plaintiffs*

/s/ Lauren Marie Wilchek
Lauren Marie Wilchek